Karl GLAAB, Appellant

v.

HONEYWELL INTERNATIONAL, INC., American Standard, AO Smith Corporation, Argo Packing Corporation, Aventis Cropscience USA, Inc., Aw Chesterton, Inc., Bondex International, Brand Insulations, Inc., Carrier Corporation, Chrysler Corporation, Cleaver Brooks, Crane Packing, Crane Company, Dap, Inc., Durabla Manufacturing Company, Durametallic Corporation, Ford Motor Company, Foster Wheeler Corporation, Inc., Garlock, Inc., General Motors Corporation, Georgia Pacific Corporation, Gould, Inc., Green Tweed & Company, Inc., JH France Refractories Company, Keeler Dorr–Oliver Boiler Company, Owens Brockway Glass Container, Inc., Metallo Gasket Company, Pars Manufacturing Company, Pecora Corporation, Rapid American Corporation, Sepco Corporation, Inc., SOS Products Company, Surseal Gasket & Packing Company, Inc., Weil McClain Company and York International, Appellees.

Superior Court of Pennsylvania.

Argued Aug. 26, 2012.
Filed Oct. 22, 2012.

Edward M. Nass, Philadelphia, for appellant.

Michael A. Pollard, Chicago, IL, for John Crane, Inc., appellee, pro hac vice.

Paul E. Wojcicki, Chicago, IL, for Weil, appellee.

BEFORE: GANTMAN, J., PANELLA, J., and FITZGERALD, J.[*]

OPINION BY GANTMAN, J.:

Appellant, Karl Glaab, appeals from the summary judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellees in this asbestos action. Appellant asks us to determine whether he made out a *prima facie* case of a compensable asbestos-related injury to defeat the entry of summary judgment. We hold Appellant presented a *prima facie* case of an asbestos-related compensable injury to overcome a dispositive motion at this stage of the proceedings. Accordingly, we vacate and remand the case for further prosecution.

The trial court sets forth the relevant facts and procedural history of this case as follows:

> [Appellant] instituted this action on January 5, 2005, alleging [Appellant] was "diagnosed as suffering from pulmonary asbestosis and asbestos-related pleural disease as well as suffering from pulmonary impairment and disability causally related to asbestos exposure and asbestos disease with symptoms, including but not limited to, shortness of breath," as a result of his occupational exposure to asbestos-containing products.[1] In support of his allegations, [Appellant] submitted the expert report of pulmonologist, Jonathan Gelfand, M.D. Dr. Gelfand reported that [Appellant] "has shortness of breath climbing one flight

---

[*] Former Justice specially assigned to the Superior Court.

of stairs," and also "has a dry cough most days." Dr. Gelfand's report further indicated that [Appellant] is 72 inches tall, weighs 232 pounds and smoked one pack of cigarettes a day for approximately 20 to 25 years. Dr. Gelfand administered a pulmonary function test ("PFT"), the results of which led Dr. Gelfand to opine that "severe airflow obstruction with some air trapping and moderate reduction of diffusion," was present. In addition, Dr. Gelfand acknowledged that [Appellant's] "pulmonary function test *does not technically meet the criteria for restriction.*"

---

[1] From 1954 through 2003 [Appellant] worked for various plumbing contractors.

On October 9, 2007, [Appellees] filed motions for summary judgment, asserting that [Appellant] failed to state a compensable injury pursuant to *Giffear v. Johns–Manville Corp.* [429 Pa.Super. 327], 632 A.2d 880 (Pa.Super.1994) and *Quate v. Am. Std., Inc.*, 818 A.2d 510, 513 (Pa.Super.2003). [Appellees] argued that "a litany of non-asbestos related medical conditions contribut[ed] to [Appellant's] shortness of breath" including:

 a) Heart attack 2006 and 2007; b) Bypass surgery with 6 bypasses 2006; c) Insulin dependent diabetes; d) Prostate cancer; e) Chronic obstructive pulmonary disease; f) Pneumonia; g) Hypothyroidism; h) Hemochromatosis; and i) Chronic back pain.

[Appellees] contended that based on the evidence of record, "[Appellant] has failed to establish the necessary *causal link* between his shortness of breath and his asbestos exposure because his panoply of current medical conditions create symptoms which are consistent with those that occur from exposure to asbestos, including shortness of breath."

On October 29, 2007, [Appellant] answered [Appellees'] motion arguing that [Appellant] first began experiencing shortness of breath around 2001. [Appellant] argued that his shortness of breath "has gotten worse" from 2001 and he now cannot complete the walk from his garage to his house, a distance of 100 yards, without taking a break. [Appellant] further argued that Dr. Gelfand's report created a reasonable basis on which to relate the physical symptoms suffered by [Appellant] (his shortness of breath on exertion) to asbestos exposure.

On November 29, 2007, after consideration of [Appellees'] motions and [Appellant's] responses thereto, this [c]ourt granted [Appellees'] motions for summary judgment and dismissed with prejudice all claims against all remaining [Appellees].

After [Appellant] appealed and timely filed his 1925(b) Statement of Matters Complained of on Appeal, this [c]ourt issued its [o]pinion on August 7, 2008.

On November 9, 2010, the Superior Court issued an Order remanding this matter for a reconsideration in light of the Pennsylvania Supreme Court's decision in *Summers v. Certainteed Corp.*, 606 Pa. 294, 997 A.2d 1152 (2010).

(Trial Court Opinion, filed December 21, 2011, at 1–3) (internal citations and footnote omitted). After reconsideration, the trial court again granted summary judgment in favor of Appellees on August 5, 2011.

On September 1, 2011, Appellant filed a timely notice of appeal. The trial court directed Appellant on October 7, 2011, to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule 1925(b) statement on October 28, 2011.

Appellant raises the following issues for our review:

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW IN RULING THAT [APPELLEES] WERE ENTITLED TO SUMMARY JUDGMENT BASED ON [APPELLANT'S] ALLEGED FAILURE TO SHOW A COMPENSABLE ASBESTOS–RELATED INJURY?

WHETHER THE EVIDENCE PRESENTED IN OPPOSITION TO [APPELLEES'] SUMMARY JUDGMENT MOTIONS CREATED A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER [APPELLANT] HAS A COMPENSABLE ASBESTOS–RELATED INJURY?

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW IN RULING THAT A DIAGNOSIS OF ASBESTOSIS IS REQUIRED IN ORDER TO SHOW A COMPENSABLE ASBESTOS–RELATED INJURY?

WHETHER THE [TRIAL] COURT FAILED TO REVIEW [APPELLANT'S] EXPERT REPORTS AND MEDICAL RECORDS IN A LIGHT MOST FAVORABLE TO [APPELLANT]?

WHETHER [APPELLANT] CAN PROVE A COMPENSABLE ASBESTOS–RELATED INJURY EVEN WHERE [APPELLANT] SUFFERS FROM OTHER POSSIBLE CONTRIBUTING FACTORS TO HIS SHORTNESS OF BREATH AND ACCOMPANYING PHYSICAL SYMPTOMS AND IMPAIRMENTS?

(Appellant's Brief at 4).

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court will disturb the trial court's order only upon an error of law or an abuse of discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discre-

tion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

\* \* \*

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.

> [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if ... charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

\* \* \*

*Chenot v. A.P. Green Services, Inc.,* 895 A.2d 55, 60–62 (Pa.Super.2006) (internal citations and quotation marks omitted).

For the purposes of disposition, we combine Appellant's arguments. Appellant avers he presented sufficient evidence demonstrating he suffers from a compensable asbestos-related injury. Specifically, Appellant maintains he has pleural thickening and shortness of breath as a result of his exposure to asbestos while working for approximately forty-five years in the plumbing and heating trade. Moreover, Appellant contends he has discernible physical and functional impairments resulting from his exposure to asbestos, which prevent him from performing certain physical activities. Appellant further complains the trial court failed to review his expert reports, medical records, and other evidence in the light most favorable to him. If the court had applied the proper standard, it should have agreed that Appellant could prove a compensable asbestos-related injury even if he suffers from other possible factors contributing to his shortness of breath and accompanying physical symptoms and impairments. Appellant asserts the trial court erred as a matter of law in ruling that a diagnosis of asbestosis is required to show a compensable asbestos-related injury. Appellant argues the evidence presents a genuine issue of material fact as to whether Appellant has a compensable asbestos-related injury. Appellant concludes the trial court erred as a matter of law in granting Appellees summary judgment on the ground that Appellant failed to show a compensable asbestos-related injury. For the following reasons, we agree that the case requires further proceedings.

■ With regard to expert opinions in the context of summary judgment, our Supreme Court said:

> It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury.... Accordingly, trial judges are required to pay deference to the conclusions of those who are in the best position to evaluate the merits of scientific theory and technique when ruling on the admissibility of scientific proof.

> At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. This clearly in-

cludes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, . . . and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact.

*Summers, supra* at 309–10, 997 A.2d at 1161 (internal citations and quotation marks omitted). Another integral part of any asbestos case is whether the plaintiff has suffered a compensable asbestos-related injury. *Id.* at 311, 997 A.2d at 1162.

Prior to 1996, a plaintiff possessed a viable cause of action against asbestos manufacturers upon a mere diagnosis of an asbestos-related condition. That changed, however, when this Court held that diagnosed, but asymptomatic, asbestos-related pleural thickening failed to state a cognizable cause of action. *Simmons v. Pacor, Inc.*, 543 Pa. 664, [675,] 674 A.2d 232, 237 (1996). Accordingly, only upon the development of symptoms and physiological impairment could a plaintiff commence litigation for an asbestos-related injury. In determining what actually constituted "symptoms and physiological impairment," we noted that when the pleural thickening is asymptomatic, individuals are able to lead active, normal lives, with no pain or suffering, no loss of an organ function, and no disfigurement due to scarring. **It is thus unassailable that the converse is equally true: when pleural thickening becomes symptomatic, and individuals are no longer able to lead normal lives, *Simmons* is satisfied and a viable cause of action exists, as a plaintiff is then, in the legal sense, harmed.**

Even before our pronouncement in *Simmons*, however, confusion began to mount in light of different panels of the Superior Court espousing inconsistent views concerning what are, and are not, compensable symptoms and physiological impairments. In 1995, a panel of the Superior Court held that shortness of breath alone was non-compensable when unaccompanied by physical symptoms, functional impairments, or disabilities. *Taylor v. Owens–Corning Fiberglas Corp.* [446 Pa.Super. 174], 666 A.2d 681, 687–88 ( [Pa.Super.]1995). The same panel, in a separate case argued the same day, then permitted litigation to continue when the asbestos-related breathlessness prohibited life activities such as walking, climbing stairs, or driving nails with a hammer. *White v. Owens–Corning Fiberglas Corp.* [447 Pa.Super. 5], 668 A.2d 136, 139–40 ( [Pa.Super.]1995). Inconsistent with *Taylor* and *White*, however, a different panel of the Superior Court, two years later, found a *prima facie* showing sufficient to undergird recovery when a plaintiff merely established (1) an asbestos-related condition; (2) shortness of breath; and (3) a causal connection between the two. *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998).

*Id.* at 311–12, 997 A.2d 1152, 1162 (2010) (some internal citations, quotation marks, and footnote omitted) (emphasis added). Ultimately, the *Summers* Court concluded that under either standard, the plaintiffs in that case had established compensable injuries:

An analysis under the *Taylor/White* test is simple: both men clearly suffer from "physical symptoms" and "functional impairments." They have been forced into retirement, cannot walk short distances without becoming short of breath, nor

can they enjoy fishing. Likewise, under *McCauley*, each man suffers from shortness of breath, has been diagnosed with an asbestos-related condition, and [the] shortness of breath, at least in part, has been causally linked to asbestos exposure. Accordingly, under *Simmons* and its (contradictory) progeny, Appellants suffer from compensable injuries.

*Id.* at 313, 997 A.2d at 1163. Thus, the Court saw no need to reconcile any confusion resulting from what appeared to be conflicting *prima facie* standards, because the plaintiffs had demonstrated a compensable injury under either standard; so *Summers* was not the proper vehicle and "any adoption of a uniform test or *prima facie* standard at this juncture would be dicta." *Id.* at 313 n. 16, 997 A.2d at 1163 n. 16. *Summers* then focused on the issue of causation and expressly disapproved of *Quate v. American Standard, Inc.*, 818 A.2d 510, 511 (Pa.Super.2003) as follows:

> In applying *Quate* to the instant cases, the courts below dismissed Dr. Gelfand's conclusions, made to a reasonable degree of medical certainty, that Appellants each suffer from debilitating conditions caused at least in part by occupational exposure to asbestos, and instead focused on Appellants' other medical conditions (specifically, obstructive lung disease due to smoking) as being dispositive of their claims. In the context of negligence actions, we have held unequivocally that the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence. While asbestos litigation implicates concepts of strict liability rather than negligence, the requirements of proving substantial-factor causation remain the same.

> Under this Commonwealth's jurisprudence, where it is clear that reasonable minds could differ on the issue of causation, precluding asbestos litigants from pursuing causes of action, supported by competent medical evidence, merely because of the existence of competing health conditions is unsustainable. To that end, the *Quate* analysis defies the scores of cases decided over the decades by the appellate courts of this Commonwealth holding that disputed issues of causation are for the jury and the jury alone. Accordingly, after careful consideration, to the extent *Quate* states or holds otherwise, it is explicitly disapproved.

*Summers, supra* at 315–16, 997 A.2d at 1164–65 (internal citations, quotation marks, and footnote omitted).

Subsequently, the Supreme Court addressed another issue relating to causation in the asbestos context *via* the admissibility of the "any-exposure" theory of causation, which states "each and every fiber of inhaled asbestos is a substantial contributing factor to any asbestos-related disease." *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 30 (Pa.2012). The *Betz* Court rejected the "any exposure" theory of causation, concluding it was theoretically "in irreconcilable conflict with itself." *Id.* at 56. An "unquantified (and potentially infinitesimal) increase in risk" of developing a disease cannot serve as "proof that a defendant's product was a substantial cause of a plaintiff's or decedent's disease." *Id.* at 40. Therefore, the *Betz* Court affirmed the trial court's decision to preclude the use of the "any exposure" theory of causation in asbestos cases. *Id.* at 58.

 In the instant case, the trial court initially entered summary judgment in favor of Appellees, finding Appellant (1) did not suffer from a compensable, asbestos-related injury and (2) was unable to

demonstrate his asbestos exposure caused his physical impairments, given his other ailments. On appeal, this Court vacated and remanded for reconsideration under *Summers.* Upon remand, the trial court concluded summary judgment was still appropriate as follows:

> In the case *sub judice,* the record shows that [Appellant's] only alleged ailment is shortness of breath. Furthermore, the record fails to show that [Appellant's] shortness of breath on exertion is exclusively a derivative of his occupational exposure to asbestos-containing products as he has been diagnosed with numerous non-asbestos related ailments that also cause shortness of breath....

> \*　　\*　　\*

Our review of the relevant case law has found that when the only symptom is shortness of breath our courts have consistently required at least a diagnosis of asbestosis for an asbestos-related condition to be considered symptomatic and compensable. A review of [Appellant's] medical records fails to indicate any definitive diagnosis of asbestosis as [Appellant's expert] only diagnosed [Appellant] with "bilateral pleural thickening."

Similarly, our courts have failed to find a compensable injury where plaintiffs are either asymptomatic or suffering from a host of other non-asbestos related ailments which could result in shortness of breath.

\*　　\*　　\*

Clearly, the issue in *Summers* was the compelling nature of disputed issues of causation based upon *competent medical evidence* (emphasis added).

This was not the decision of this court in the original Glaab opinion. There and here, the decision is clearly based upon the uncontested fact that although [Appellant] has shortness of breath, he has not been diagnosed with asbestosis which is a requirement under the *Ryan, Lonasco*[1] and *White* line of cases.... This line of cases was not affected by the Supreme Court's recent decision and therefore the first Glaab decision should be affirmed.

(Trial Court Opinion at 5–13) (citations omitted). Given the legal precedent available, the court's interpretation of the relevant law is flawed.

Initially, the record makes clear Appellant suffers from pleural abnormalities, shortness of breath, and functional impairments. Appellant has bilateral pleural plaques and pleural thickening, with calcification. For example, Appellant is unable to walk 100 yards from his garage to his house or climb 15 stairs in his home without becoming short of breath, and can no longer perform certain necessary daily activities or lead a normal life. Appellant's expert causally links Appellant's pleural problems, symptoms, and functional impairments to his asbestos exposure. Therefore, Appellant meets both the *Taylor/White* and *McCauley* tests. *See Summers, supra.* Contrary to the court's conclusion about Appellant's condition, Appellant alleged more than just shortness of breath. Appellant demonstrated prolonged occupational exposure to asbestos, which is undisputed. Appellant offered evidence of a symptomatic pleural thickening condition that was at least in part linked to his asbestos exposure and led to functional impairment or disability. *See Summers, supra* at 312, 997 A.2d at 1162 (stating "when pleural

---

**1.** *See Ryan v. Asbestos Corp. Ltd.,* 829 A.2d 686 (Pa.Super.2003); *Lonasco v. A–Best Prod-* ucts Co., 757 A.2d 367 (Pa.Super.2000).

thickening becomes symptomatic, and individuals are no longer able to lead normal lives, *Simmons* is satisfied and a viable cause of action exists, as a plaintiff is then, in the legal sense, harmed"). The fact that Appellant suffers from other, non-asbestos-related, health conditions which can also cause shortness of breath is not dispositive. *See Summers, supra* at 316, 997 A.2d at 1165 (disavowing *Quate* and stating: "[W]here it is clear that reasonable minds could differ on the issue of causation, precluding asbestos litigants from pursuing causes of action, supported by competent medical evidence, merely because of the existence of competing health conditions is unsustainable").

In his *prima facie* case, Appellant showed a medical diagnosis of pleural plaques/thickening, related to definable asbestos exposure of over forty-five years, accompanied by a physical symptom (dyspnea), and functional limitations to his daily life. Appellant offered evidence that his asbestos exposure was a substantial factor in causing his dyspnea and functional limitations. *See Betz, supra*. Appellant did not have to prove the alleged asbestos-related injury is the **only** possible cause of his dyspnea and functional limitations. *See Summers, supra*. Appellant also offered expert opinion that his exposure to asbestos was a "substantial contributing factor" to his pleural abnormalities which in turn are related to his shortness of breath on exertion and other physical restrictions. Therefore, whether Appellant's pleural thickening is the proximate cause of his dyspnea and physical disabilities remains a material issue of fact that the court should not have decided on summary judgment.

Moreover, the *Ryan, Lonasco* and *White* line of cases does not require a specific diagnosis of asbestosis, when shortness of breath is the only symptom of an alleged asbestos-related injury. A careful reading of these cases makes clear they require the existence of an **asbestos-related** condition, plus a symptom such as shortness of breath, and a causal connection between the two. *See Summers, supra*. In *Ryan, Lonasco* and *White*, the plaintiffs' actual diagnosis of asbestosis just happened to be coincidentally among the required asbestos-related injuries. *See Ryan, supra* (stating compensable injury requires asbestos-related condition, discernible physical symptom, and functional impairment or disability resulting from asbestos exposure; plaintiff did not have compensable injury because he failed to prove his shortness of breath was causally related to his diagnosis of asbestosis); *Lonasco, supra* (holding evidence supported verdict for plaintiff where plaintiff introduced evidence of pleural thickening, plaque formation, and asbestosis, coupled with shortness of breath and causal connection between them); *White, supra* (holding statute of limitations for compensable injury due to asbestos exposure did not begin to run until plaintiff had discernible physical symptom of asbestos-related condition, functional impairment/disability).

The general consensus in Pennsylvania law is that to present a *prima facie* case for a compensable asbestos-related injury, the plaintiff must present *prima facie* evidence of (1) his discernible asbestos exposure, (2) which is related to an asbestos-related condition that is (3) symptomatic, and (4) he suffers some functional impairment or disability as a result. Here, Appellant worked in the plumbing and heating trade for over forty-five years and handled numerous products containing asbestos. Appellant developed bilateral pleural plaques and pleural thickening, and his medical expert confirmed the asbestos

exposure related to the lung abnormalities. Appellant also suffers shortness of breath, and his medical expert opined Appellant's medical abnormalities substantially contribute to the shortness of breath. Appellant's shortness of breath purportedly prevents him from walking 100 meters or climbing 15 stairs without stopping to rest. Viewing this evidence in the light most favorable to the non-moving party, Appellant has presented a *prima facie* case of a compensable asbestos-related injury sufficient to overcome a dispositive motion at this stage of the proceedings. *See Chenot, supra.*

Based upon the foregoing, we hold Appellant presented a *prima facie* case of an asbestos-related compensable injury to overcome a dispositive motion at this stage of the proceedings. Accordingly, we vacate and remand the case for further prosecution.

Judgment vacated; case remanded. Jurisdiction is relinquished.