J-A23036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NORTHWEST SAVINGS BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C. AND ELIZABETH A. DUPUIS, ESQUIRE | |
| Appellees | No. 1611 WDA 2014 |

Appeal from the Judgment Entered September 9, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-012585

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 19, 2015**

Appellant, Northwest Savings Bank ("Bank"), appeals from the summary judgment entered in the Allegheny County Court of Common Pleas, in favor of Appellees, Babst, Calland, Clements and Zomnir, P.C. ("Appellee Law Firm") and Elizabeth A. DuPuis, Esquire ("Appellee DuPuis"). We affirm.

The relevant facts and procedural history of this case are as follows. Bank held two mortgage liens on a commercial property in Lebanon County known as Hillbilly Jack's Restaurant ("the Property").  Bank and the owners of the Restaurant, Zimark LLC ("Owners"), executed the first mortgage, valued at $430,000.00, on March 1, 2007. Bank and Owners executed the second mortgage, valued at $40,000.00, on January 8, 2008.  In 2009, Bank

contacted Appellee Law Firm to represent Bank in a possible foreclosure action on the Property. The parties did not enter into a formal representation agreement.

On August 5, 2010, Ellen Cowan ("Ms. Cowan"), contacted Bank's credit administrator, Paul DeArment ("Mr. DeArment"), and indicated the Owners had hired Ms. Cowan as a realtor to sell the Property. Ms. Cowan also informed Mr. DeArment that a sheriff sale was pending based on two years' of back taxes. Ms. Cowan asked if Bank was interested in paying the back taxes to remove the Property from the sale. Mr. DeArment subsequently emailed Appellee DuPuis and informed her of the situation with the Property. Appellee DuPuis responded on August 9, 2010, and told Mr. DeArment that the sale scheduled for September 2010 was an upset tax sale that would not divest Bank of its mortgage liens on the Property. Appellee DuPuis also told Mr. DeArment that a judicial sale was not currently scheduled and the Lebanon County Tax Claim Bureau would have to provide Bank with formal notice before such a sale could occur. Nobody bid on the Property at the tax upset sale on September 13, 2010, and Bank's interest in the Property remained unaffected.

On September 23, 2010, Ms. Cowan contacted Mr. DeArment by email, and told Mr. DeArment that the Lebanon County Tax Claim Bureau ("Tax Claim Bureau") was preparing for a judicial sale of the Property, tentatively scheduled for either December 6, 2010 or December 13, 2010. Ms. Cowan

told Mr. DeArment that if the judicial sale went forward, Bank would lose its lien interest in the Property and a new buyer would take the Property free and clear of all liens. Mr. DeArment forwarded the email to Appellee DuPuis and suggested that they should discuss the situation with the Property. The following week, Mr. DeArment and Appellee DuPuis had a telephone conversation in which Appellee DuPuis told Mr. DeArment that a judicial sale of the Property was not yet scheduled.

On October 22, 2010, the Tax Claim Bureau filed a petition for sale of unsold properties, including the Property. On October 26, 2010, the Lebanon County Court of Common Pleas issued a rule on all interested parties to show cause why the properties listed in the petition should not be sold, free and clear of their respective claims, liens, and mortgages. The court scheduled a hearing for November 30, 2010.

On November 3, 2010, the sheriff's department served notice of the judicial sale at Bank's Lebanon County branch office. The sheriff's department also served notice of the judicial sale at Bank's York County branch office on November 5, 2010. For unknown reasons, the notices received at the two branches were not successfully delivered to Mr. DeArment at Bank's headquarters in Warren County. As a result, neither Mr. DeArment nor Appellee DuPuis attended the November 30, 2010 hearing, and the court subsequently listed the Property as one of the properties to be sold free and clear of all liens at the judicial sale on December 20, 2010.

The Property sold for $27,000.00 to LJE and LLE Investment Resource Holdings at the public auction on December 20, 2010, with neither Bank nor Appellee DuPuis present.

In mid-January of 2011, Bank learned of the sale of the Property and notified Appellee DuPuis. Appellee DuPuis filed a petition to re-open the sale on behalf of Bank on February 4, 2011, alleging Bank received defective notice of the sale. On August 12, 2011, the court held a hearing on the petition, determined Bank received sufficient notice of the sale, and denied Bank's petition to re-open the sale.

On January 9, 2013, Bank filed a complaint against Appellees in which Bank alleged Appellees had committed legal malpractice and breached their fiduciary duty to Bank with respect to the Property. Appellees filed a motion for summary judgment on July 10, 2014. The court granted summary judgment in favor of Appellees on September 9, 2014. On October 2, 2014, Bank timely filed a notice of appeal. The court did not order Bank to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Bank did not file one.

Bank raises the following issues for our review:

> WHETHER THE TRIAL COURT COMMITTED ERROR OF LAW BY FAILING TO IDENTIFY A GENUINE ISSUE OF MATERIAL FACT ARISING FROM CONTRADICTORY TESTIMONY ON THE MATERIAL ISSUES OF WHETHER THE BANK ADVISED [APPELLEE DUPUIS] THAT THE PROPERTY WAS BEING EXPOSED TO THE JUDICIAL SALE BEFORE THE SALE OCCURRED, AND WHETHER [APPELLEE DUPUIS] FALSELY ADVISED THAT THE SALE WAS NOT HAPPENING[?]

> WHETHER THE TRIAL COURT COMMITTED ERROR OF LAW BY FAILING TO IDENTIFY AND CREDIT THE UNCONTRADICTED OPINIONS OF [BANK'S] EXPERTS THAT [APPELLEE] DUPUIS FELL BELOW THE STANDARD OF CARE FOR A PENNSYLVANIA COLLECTIONS ATTORNEY[?]
>
> WHETHER THE TRIAL COURT COMMITTED ERROR OF LAW BY GRANTING SUMMARY JUDGMENT ON [BANK'S] CLAIMS FOR BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY WHERE THE MOTION FOR SUMMARY JUDGMENT ONLY RELATED TO [BANK'S] ALLEGATIONS OF NEGLIGENCE[?]

(Bank's Brief at 3-4).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment,

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there

exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

In its first issue, Bank argues there is a genuine issue of material fact created by Mr. DeArment and Appellee DuPuis' "contradicting testimony." Bank claims Appellee DuPuis' testimony that she did not remember receiving

a forward of Ms. Cowan's September 23, 2010 email contradicts Mr. DeArment's testimony that Appellee DuPuis told him that Ms. Cowan's email was incorrect and a judicial sale of the Property was not scheduled. Bank asserts this contradictory testimony, when viewed in the light most favorable to Bank as the non-moving party, establishes that Appellee DuPuis gave incorrect legal advice about the judicial sale. Bank concludes the court either disregarded the testimony or made improper credibility determinations which should have been left to the jury, and this Court should reverse and remand for trial. We disagree.

"To maintain a claim of legal malpractice based on negligence, a plaintiff must show an attorney-client or analogous professional relationship with the defendant-attorney." **Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 806 (Pa.Super. 2007), *appeal denied*, 596 Pa. 733, 945 A.2d 171 (2008). Significantly:

> Absent an express contract, an implied attorney-client relationship will be found if (1) the purported client sought advice or assistance from the attorney, (2) the advice sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to render such assistance; and (4) it is reasonable for the putative client to believe the attorney was representing him.

**Cost v. Cost**, 677 A.2d 1250, 1254 (Pa.Super. 1996), *appeal denied*, 547 Pa. 727, 689 A.2d 233 (1997) (internal citations omitted).

In a cause of action for legal professional malpractice based on negligence, the plaintiff must demonstrate: (1) employment of the attorney

- 7 -

or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damages to the plaintiff. **Sabella v. Estate of Milides**, 992 A.2d 180, 186-87 (Pa.Super. 2010), *appeal denied*, 608 Pa. 642, 9 A.3d 631 (2010). "[A]n attorney who undertakes representation of a client owes that client both a duty of competent representation and the highest duty of honesty, fidelity, and confidentiality." **Capital Care Corp. v. Hunt**, 847 A.2d 75, 84 (Pa.Super. 2004).

Significantly, "[a]n attorney will be deemed negligent if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances." **Fiorentino v. Rapoport**, 693 A.2d 208, 212 (Pa.Super. 1997), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997) (internal quotation marks omitted). "A lawyer should exert [her] best efforts to insure that [actions] of [her] client are made only after the client has been informed of relevant considerations." **Collas v. Garnick**, 624 A.2d 117, 120 (Pa.Super. 1993), *appeal denied*, 535 Pa. 672, 636 A.2d 631 (1993). "A lawyer is not required to be infallible; however, …she is expected to conduct that measure of research sufficient to allow the client to make an informed decision." **Fiorentino, supra** at 213. "The existence of a duty is a question of law for the court to decide." **R.W. v. Manzek**, 585 Pa. 335, 346, 888 A.2d 740, 746 (2005).

Instantly, Bank and Appellees agree Appellee DuPuis' response to Mr. DeArment's August 5, 2010 email correctly informed Bank that the tax upset sale, scheduled for September 2010, would not divest Bank of its mortgage liens on the Property. The parties also agree Appellee DuPuis told Bank that the Tax Claim Bureau would have to provide Bank with formal notice before a judicial sale of the Property could occur. For purposes of the motion for summary judgment, the parties further agree that Mr. DeArment forwarded Ms. Cowan's September 23, 2010 email to Appellee DuPuis about a possible judicial sale, and Appellee DuPuis promptly replied to Mr. DeArment by telephone that a judicial sale of the Property was not scheduled at that time. The record makes clear Appellee DuPuis' information about a possible judicial sale was correct at the time given, because the Tax Claim Bureau did not file its petition for sale of unsold properties until October 22, 2010.

Further, nothing in the record suggests Bank asked Appellee DuPuis to monitor the court dockets for a judicial sale of the Property. Additionally, nothing in the record supports Bank's assertion that Appellee DuPuis should have learned of the judicial sale after the Tax Claim Bureau filed its petition on October 22, 2010. In fact, the record reveals, and the parties agree, that Bank received notice of the judicial sale at two of Bank's branches on November 3, 2010 and November 5, 2010. Appellees did not receive notice of the sale and were not attorneys of record with respect to the Property. Thus, Appellee DuPuis consistently provided Bank with correct information so

Bank would be on notice if a judicial sale was scheduled. Because the Bank set forth no evidence to suggest Appellee DuPuis expressly or impliedly agreed to monitor the dockets or anticipate that Bank would mishandle the notice of judicial sale it had received, Appellees owed Bank no duty in this context. *See Sabella, supra*. Therefore, no genuine issue of material fact existed regarding whether the Property was being exposed to a judicial sale at the time Appellee DuPuis told Bank that the sale was not scheduled. Bank's first issue merits no relief.

In its second issue, Bank argues its experts' opinions create a genuine issue of material fact that precludes summary judgment. Bank claims its experts opined that Appellee DuPuis' failure to contact the Tax Claim Bureau to inquire about the status of the Property, after receiving Mr. DeArment's September 23, 2010 email, fell below the applicable standard of care for a Pennsylvania collections attorney. Bank states Appellees did not offer any evidence to contradict the opinions of Bank's experts, so the court should have credited the reasonable inferences from the opinions in favor of Bank as the non-moving party. Bank avers the opinions of its experts directly contradict the trial court's findings in favor of Appellees. Bank concludes the opinions of its experts create a genuine issue of material fact regarding Appellee DuPuis' actions and this Court should reverse and remand for trial. We disagree.

With regard to expert opinions in the context of summary judgment,

Pennsylvania law states that, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment. **DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578 (Pa.Super. 2013) (citing **Glaab v. Honeywell Intern., Inc.**, 56 A.3d 693, 697-98 (Pa.Super. 2012)). Likewise, neither the moving party nor the non-moving party can rely on its own witness' testimony *via* affidavits or deposition, either to prevail or defeat summary judgment. **DeArmitt, supra** (citing generally **Borough of Nanty-Glo v. American Surety Co. of New York**, 309 Pa. 236, 163 A. 523 (1932)). "The function of the summary judgment proceedings is to avoid a useless trial but is not, and cannot be used[,] to provide for trial by affidavits or trial by depositions. That trial by testimonial affidavit is prohibited cannot be emphasized too strongly." **DeArmitt, supra** at 595. At the summary judgment stage, the court must initially determine whether the plaintiff has alleged facts sufficient to establish a *prima facie* case; next the court must determine whether there is any discrepancy as to any material facts of the case; finally, the court must refrain from acting as fact-finder by resolving any material issues of fact. **Id.** at 594-95.

Instantly, the record makes clear the Bank did not ask Appellee DuPuis to monitor the status of the Property within the court dockets or with the Tax Claim Bureau. Thus, the court correctly held that Appellees owed Bank no duty to monitor the status of the Property, and Bank failed to make out a *prima facie* case of legal malpractice. **See DeArmitt, supra.** Further, given

the court's determination that Appellees owed no duty to Bank, the court was under no obligation to consider the opinions of Bank's experts. Bank's suggestion that the court should have credited its experts' opinions in Bank's favor is inappropriate where the court must refrain from making credibility and weight determinations at the summary judgment stage. *Id.* Therefore, the opinions of Bank's experts did not create a genuine issue of material fact, and Bank's second issue on appeal warrants no relief.

In its third issue, Appellant argues summary judgment was inappropriate as to Appellant's breach of contract and breach of fiduciary duty claims. Appellant avers Appellees' motion for summary judgment related only to Appellant's negligence claim and addressed neither Appellant's breach of contract claim nor Appellant's breach of fiduciary duty claim against Appellees. Appellant states it can assert a breach of contract and a breach of fiduciary duty as well as a negligence claim against Appellees. Appellant contends Appellees offered no basis for dismissal of either Appellant's breach of contract claim or breach of fiduciary duty claim. Appellant concludes the court should have construed Appellees' motion as a motion for partial summary judgment with respect to negligence only, and this Court should reverse and remand for trial on the breach of contract and breach of fiduciary duty claims. We disagree.

"Activity is actionable if it constitutes breach of a duty imposed by statute or by common law. *Maritrans GP Inc. v. Pepper, Hamilton &*

***Scheetz***, 529 Pa. 241, 253, 602 A.2d 1277, 1283 (1992). A legal malpractice claim based on breach of contract, "involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." ***Zokaites Contracting Inc. v. Trant Corp.***, 968 A.2d 1282, 1287 (Pa.Super. 2009), *appeal denied*, 604 Pa. 691, 985 A.2d 972 (2009). With respect to a legal malpractice claim based on breach of contract, this Court has stated:

> [T]he attorney's liability must be assessed under the terms of the contract. Thus, if attorney agrees to provide…her best efforts and fails to do so, an action in assumpsit will accrue. An attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

***Fiorentino, supra*** at 213 (internal citations omitted).

With respect to a breach of fiduciary duty claim, "a confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that [s]he will act in good faith for the other's interest." ***Basile v. H & R Block, Inc.***, 777 A.2d 95, 102 (Pa.Super. 2001), *appeal denied*, 569 Pa. 714, 806 A.2d 857 (2002). The fiduciary duty owed by an attorney arises from either an express or implied attorney-client relationship. ***See Estate of Pew***, 655 A.2d 521, 545 (Pa.Super. 1994).

> The [Pennsylvania] Supreme Court [has] held that part of the fiduciary duty which arises out of the attorney client

> relationship is that of undivided loyalty. This duty, the Court emphasized, prohibits an attorney from engaging in activity which constitutes a conflict of interest, and the Court held that a breach of that duty by the attorney is actionable.

*Gorski v. Smith*, 812 A.2d 683, 711 (Pa.Super. 2002), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004).

Instantly, the record belies Bank's claim. In Bank's complaint, Bank averred identical facts in support of its negligence claim, breach of contract claim, and breach of fiduciary duty claim. Because all of the assertions contained in Bank's complaint raised the same misconduct, the trial court properly assessed Bank's claims as one. Additionally, Bank and Appellees did not enter into a formal contract with respect to the Property, and Appellee DuPuis made no promise to Bank that Appellee DuPuis would monitor the status of the Property. Thus, no express or implied contract existed between Appellees and Bank from which Bank could successfully assert a breach of contract claim. *See Zokaites Contracting Inc., supra*. Because no contract creating an attorney-client relationship existed between the parties with respect to the Property at issue, Appellees owed Bank no fiduciary duty in this context; and Bank's breach of fiduciary duty claim fails as well. *See Estate of Pew, supra*.

When Appellees filed their motion for summary judgment, they broadly challenged Bank's claim that Appellees owed a duty to Bank under any theory asserted. The record makes clear that Bank did not ask Appellee

DuPuis to monitor the status of the Property, and the trial court properly determined Appellees owed Bank no duty under any theory alleged in Bank's complaint. Therefore, the trial court properly granted summary judgment in favor of Appellees as to all of Bank's claims; and Bank's third issue on appeal lacks merit. Accordingly, we affirm the summary judgment entered in favor of Appellees.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2015